■ In the Matter of LOUISE PRINCIPE, Petitioner, v H. CARL McCALL, as Comptroller of the State of New York and the New York State and Local Retirement Systems, Respondent. [680 NYS2d 754] —Mikoll, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court,

---

entered in Albany County) to review a determination of respondent which denied petitioner's application for disability retirement benefits.

Petitioner was employed by the Department of Health as a research scientist for 13 years. On November 8, 1993 she filed for disability retirement benefits under Retirement and Social Security Law articles 14 and 15. Petitioner was granted benefits under Retirement and Social Security Law article 14. Respondent, however, denied her benefits under Retirement and Social Security Law article 15, finding that petitioner was not permanently incapacitated from the performance of her duties as a research scientist. Petitioner's request for redetermination was granted and the determination of respondent was upheld.

Petitioner testified to extreme muscle fatigue which interfered with her ability to handle the bound volumes she used in research and made it difficult to take notes and write legibly. She used a wheelchair for mobility and long leg braces for stability. She indicated that she was able to stand for limited periods of time. Her physician, James Cole, board certified in physiatry, diagnosed petitioner as suffering from myopathy, which affects the metabolism in her muscles. He diagnosed her as having profound weakness in her upper right extremity, her lower extremities and in other muscles of the body. Cole found that petitioner had an uncommon form of myopathy making it difficult to sustain muscular effort for more than one or two minutes at a time. He concluded that petitioner was unable to perform her duties as a research scientist and that her condition is progressive.

Sheldon Staunton testified as an expert on behalf of the New York State and Local Employees' Retirement System. He testified that although he could not say whether petitioner suffered from a low-grade metabolic myopathy, he concluded that there was no evidence of a crippling myopathy.

The Hearing Officer held that petitioner was not permanently disabled and denied her benefits pursuant to Retirement and Social Security Law § 605 (c). The Hearing Officer thus accepted the opinion of Staunton, discounting that of Cole and the consulting physicians' written conclusions. He noted as well that Cole never addressed the question of permanency.

In order to be entitled to benefits, petitioner must prove permanency (*see, Matter of Malacynski v McCall*, 221 AD2d 764, 765). In the case of conflicting medical testimony, it is within respondent's authority to resolve any such conflicts (*see, Matter of Rockwell v State of New York*, 249 AD2d 764, 765). The find-

ing of no physical incapacity to perform one's duties under Retirement and Social Security Law § 605 must be upheld if such finding is not irrational or unreasonable (*see, Matter of Burns v Regan*, 87 AD2d 944, 945, *appeal dismissed* 57 NY2d 954).

We reject petitioner's contention that because petitioner was qualified for benefits pursuant to Retirement and Social Security Law article 14, she is entitled *a fortiori* to benefits under article 15 of the same statute. While benefits under article 14 are conferred by operation of law when an applicant has been determined to be eligible for primary Social Security benefits (*see*, Retirement and Social Security Law § 506) and respondent does not need to make an independent evaluation and determination of an applicant's disability, the same does not prevail under Retirement and Social Security Law § 605 (c). Respondent must make an independent evaluation under this statute as to whether petitioner was physically and permanently incapacitated from the performance of her duties.

Turning now to the question of whether substantial evidence supports respondent's finding, we note that the neurological examination conducted by Staunton was largely visual. No scientific tests were resorted to except the usual tendon and triceps tests to elicit reflexes and jerks. Finding petitioner's body mass to be normal, Staunton concluded that there was nothing wrong with her. His final diagnosis was that she suffered from a Munchausen condition—malingering. The reports of petitioner's other treating physicians introduced by the Retirement System, however, indicated positive diagnoses initially of sclerosis of 10 years' duration which was thereafter concluded to be myopathy. A biopsy done demonstrated metabolic changes in petitioner's muscles. Another test indicated abnormal responses of the foot to stimulation of the ankle, indicating the possible onset of tarsal tunnel syndrome. A third test done by Neil Lava on conduction velocities of three nerves, going down the legs, was found to show delayed responses with possible nerve damage. George Forrest did myography studies of the right arm. He found a repetition stimulation study to be abnormal. Cole found muscular fibrillation in six of eight muscles with polyphasic potentials and he diagnosed the condition as generalized atypical myopathy with evidence of old right cervical radiculopathy. Petitioner had previously had several surgeries on her neck.

In 1985 Cole had a biopsy of the muscle of petitioner's left leg done which showed an abnormal number of sarcolemma cells in the muscle. Based on the same examination, Lava

concluded that the biopsy was abnormal. Staunton admitted that the muscle looked abnormal in this examination. A report from Mark Dentinger indicated that an electron microscopic survey showed mild nonspecific changes, that is, an accumulation in the muscles which should not be there. An electron micrograph of a small artery with some muscle cells adjacent was reported to be abnormal. A very recent report by Fredric Schoen of an electromyography test was termed abnormal as well.

When we add to the sharp diversity of medical opinion between Cole and Staunton the various medical support from other examining physicians whose tests indicated abnormal findings, we conclude that substantial evidence does not support respondent's determination. We note that Staunton failed to perform any of the tests with which diagnoses he disagreed to substantiate his own conclusions. We find his candid admission that he was deterred from having petitioner walk unaided in the examining room for fear that she would be unable to do so most curious in view of his finding that she is normal and needs neither her wheelchair nor leg braces.

Finally, on the question of whether permanency was established by Cole's testimony, we conclude that it was. Finding petitioner currently unable to perform her duties and concluding that her condition was progressive equates to a finding of permanency.

Cardona, P. J., Crew III, White and Yesawich Jr., JJ., concur. Adjudged that the determination is annulled, with costs, petition granted and matter remitted to respondent for further proceedings not inconsistent with this Court's decision.